## Elijah Fiske *versus* The Inhabitants of Lincoln.

The plaintiff, being the guardian of a person whose legal settlement was in the town of L. and who was incapable of labor and had no property except a small pension, informed the overseers of the poor of two successive years, that he (the guardian) was running a risk, as he was obliged to become responsible for the board of the ward, and that when he received the pension it took about one half of it to pay arrearages due for the board, and that the town must take the risk. The ward died when all the property belonging to him had been exhausted and expenses had been necessarily incurred by the guardian, partly before and partly after the second notice and request. It was *held*, that the ward was in need of relief; and that under the second notice and request the plaintiff was entitled to recover of the town the expenses incurred subsequently thereto, but that the first notice and request would have been sufficient in regard to all the expenses.

As the relation of guardian and ward subsisted between the plaintiff and the pauper, the objection that the plaintiff was not obliged to relieve the pauper because he was living with another inhabitant of the town, was *held* to be inapplicable.

Assumpsit to recover a sum of money expended by the plaintiff for the support of Jonathan Tower from the 6th of October, 1834, to the 26th of January, 1835.

On a case stated it appeared, that the legal settlement of Tower was in Lincoln. He was under guardianship as a spendthrift, and the plaintiff was his guardian. He was a pensioner of the United States as a revolutionary soldier. He had no property other than his wearing apparel and his pension, which was $ 96 *per annum*, and he was very old and infirm. The plaintiff received his pension semi-annually, and paid for his board in a private family. In 1833 the overseers of the poor of the town of Lincoln were three in number, viz. Amos Hagar, Junius Baker and the plaintiff. At a meeting of the overseers in the autumn of 1833, the plaintiff observed to them that he was running a risk, as he was obliged to become responsible for the board of Tower and could get his pension only once in six months ; that when he received a semi-annual payment, it took about one half of it to pay arrearages due for board ; and he added, " I cannot risk it, the town must ; you may take what mode you please to support him." Hagar replied, " As you are an overseer, you had better get him out as cheap as you can, and if he shall die within a year, we will save you from all harm," or " will see you paid for it." Baker, the other overseer, was busy in writing a letter, and did not hear

the conversation, but Hagar supposed that he heard it and that he did not object to the arrangement.

The same board of overseers made a contract with one Rice to keep all the paupers of the town for one year, ending in April 1834. If Tower had died within the year, Hagar would have felt bound, as he testified, to see the plaintiff indemnified, but did not make a contract with him for a longer period. Hagar had no express authority to make that contract, and did not say any thing to Rice about supporting Tower. Hagar supposed he had nothing to do with another year. Tower had not then caused any expense to the town, and Hagar supposed he would not, unless he should die when a half-year had partially elapsed.

In April 1834 the town made a contract with one Haynes for the support of all the poor, for five years from that time. After the election of the overseers for 1834, viz. at a meeting of the board in November of that year, the plaintiff said to them, that he had made a statement to the former board and must make the same to them ; he then added, "I shall not have enough in my hands to settle the account for Tower's support, if he should die between the half-yearly payments. I do not choose to run the risk of losing the expense of his support and the town must." Two of the board, which consisted of three members only, heard these remarks of the plaintiff, but made no reply.

Tower died on the 26th of January, 1835. The plaintiff had necessarily expended all the property belonging to Tower, and also the sum demanded in this action, in his support, and had no means of obtaining remuneration except from the town.

If on these facts the Court should be of opinion that the plaintiff was entitled to recover, the defendants were to be defaulted.

Hoar, for the plaintiff, referred to St. 1793, c. 59, § 13, enacting that every town shall be holden to pay any expense which shall be necessarily incurred for the relief of any pauper, by an inhabitant not liable by law for his support, after notice and request made to the overseers of the town and until provision shall be made by them. As to the sufficiency of the notice, he cited Dalton v. Hinsdale, 6 Mass. R. 503 ; Conway

*v. Deerfield*, 11 Mass. R. 327 ; *Marlborough* v. *Rutland*, 11 Mass. R. 483 ; *King* v. *Butler*, 15 Johns. R. 282 ; *Lee* v. *Deerfield*, 3 N. Hamp. R. 290.

*J. Keyes*, for the defendants, said that Tower did not stand in need of relief until more than a year after the first conversation of 1833 ; that in the conversation in 1834, the plaintiff did not say that Tower was then a pauper ; that the plaintiff could not give notice to the overseers, but it should have come from the person with whom Tower was living and receiving relief from day to day ; that the plaintiff in fact gave no notice and made no request, but only proposed to enter into a conditional bargain, that if Tower should become poor, the town should indemnify the plaintiff, which bargain the overseers had no authority to make ; that if a man having a hired servant, should say to the overseers, " he may be taken sick and become chargeable, and the town must protect me," this would not be a legal notice, but this was precisely like the case at bar.   He cited *St.* 1793, *c.* 59, § 1, 13 ; *Mitchell* v. *Cornville*, 12 Mass. R. 333 ; *Miller* v. *Somerset*, 14 Mass. R. 396 ; *Kittredge* v. *Newbury*, 14 Mass. R. 448.

Wilde J. afterward drew up the opinion of the Court. To entitle the plaintiff to recover, it must appear that he has necessarily incurred expenses, as charged in the writ, for the relief of Jonathan Tower, his ward ; that his ward was poor and stood in need of relief, and that before the expenses were incurred ; and that he gave notice to the overseers, according to the *St.* 1793, *c.* 59, § 13.   And upon the case stated we are of opinion, that all these requisitions have been complied with by the plaintiff.

The pauper was unable to labor, and he had no property, or means of support, except his pension, which had been expended for his support previous to the commencement of the charges against the town.   The pauper, therefore, stood in need of relief when notice was given, and the objection that the plaintiff was not obliged to receive him, because he was living with another inhabitant of the town, is not, as it appears to us, well founded.   If the relation of guardian and ward had not subsisted between the plaintiff and the pauper, this objection might prevail ; but the plaintiff, in this relation, not only

<div style="margin-left:2em">Fiske<br>v.<br>Lincoln.</div>

had the right, but it was his duty, to see that his ward did not suffer, especially as he had provided for him the year before with the approbation of the overseers of the poor, they having promised to indemnify him, or save him harmless, should the small pension prove insufficient for his support.

Then as to the notice and request. This was first made in 1833, and was renewed in November 1834. When the last notice was given the plaintiff had no funds or property of any description belonging to his ward. All his property had been expended and was only sufficient for his support up to October 6th, 1834. Under the last notice and request the plaintiff is entitled to recover all subsequent expenses ; but without this second notice, we are of opinion the plaintiff would be entitled to recover. The notice in 1833 was equally valid, and the overseers complied with the plaintiff's request by agreeing to indemnify him, in case the pauper should die within the year. The plaintiff, however, does not rely on the promise of the overseers, and although that was limited to the current year, there was no limitation to the notice and request. If the first notice and request to provide for the pauper was valid, as we think it was, there was no necessity of a renewal.

*Judgment for plaintiff.*